UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JASON HINTZE,<br><br>           Plaintiff,<br><br>v.<br><br>STEVE SISOLAK, *et al.*,<br><br>           Defendants. | Case No. 3:22-CV-00436-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 38] |

This case involves a civil rights action filed by Plaintiff Jason Hintze ("Hintze") against Defendants Charles Daniels ("Daniels"), Tim Garrett ("Garrett"), Kara LeGrand ("LeGrand"), Harold Wickham ("Wickham"), Kirk Widmar ("Widmar"), and Brian Williams ("Williams") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 38, 40.)[2] Hintze responded, (ECF No. 50), and Defendants replied. (ECF No. 52.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 38) be granted.

**I.    BACKGROUND**

    **A.    Procedural History**

Hintze is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On September 28, 2022, Hintze filed a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while he was incarcerated at the Lovelock Correctional Center ("LCC"). (ECF No. 1-1.) On November 1, 2022, the District Court screened Hintze's complaint pursuant to 28 U.S.C. § 1915A(a). (ECF No. 6.) The Court allowed

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 40 consists of sealed medical records filed in support of the motion for summary judgment.

Hintze to proceed on a single Eighth Amendment deliberate indifference to unsafe prison conditions claim related to the COVID-19 pandemic against Defendants. (*Id.* at 14.) Claims alleging conspiracy to violate constitutional rights and Eighth Amendment deliberate indifference to serious medical needs were dismissed with leave to amend. (*Id.*)

Hintze's complaint alleges that Defendants knew about the inadequate response to COVID-19 at LCC. (ECF No. 1-1 at 8.) For example, Correctional Officers ("C/Os") often refused to wear masks, and they sometimes coughed in the direction of inmates who asked why they were refusing to mask. (*Id.*) C/Os also failed to enforce the rule requiring inmates to wear masks. (*Id.*) Daniels, Wickham, and Williams learned of these conditions because they toured LCC several times during the pandemic and received calls and emails on the matter from "advocacy groups." (*Id.* at 8-9.) For their part, Garrett, LeGrand, and Widmar (i) sometimes did not wear masks, (ii) personally observed C/Os "not complying with the mask mandate," and (iii) learned that inmates were forced to eat in "a crowded chow hall" where social distancing was impossible. (*Id.* at 9-10.) Despite knowing of the conditions at LCC, these Defendants allegedly failed to take action to ensure inmate safety. (*Id.* at 8-9, 22-23.) As a result, Hintze contracted COVID-19 twice—first in December 2020, and then in February 2022. (*Id.* at 18.)

On March 25, 2024, Defendants filed the instant motion arguing summary judgment should be granted because (1) there is no evidence Defendants disregarded the risk of COVID-19 to Hintze; and (2) Defendants are entitled to qualified immunity. (ECF No. 38.)

**B.     Factual Summary**

The following facts are undisputed: On April 20, 2021, Hintze was offered, but refused, a COVID-19 vaccination. (ECF No. 40-1 at 6 (sealed).) On June 24, 2021, Hintze filed a medical kite regarding his sense of taste and smell "going in and out" since having COVID-19 on an unspecified date. (*Id.* at 44 (sealed).) On July 28, 2021, Hintze filed a medical kite requesting information about the COVID-19 vaccine. (*Id.* at 42 (sealed).) On

July 30, 2021, Hintze filed a medical kite requesting a COVID-19 vaccine. (*Id.* at 43 (sealed).) In response, Hintze was told he would "be placed on the list when vaccine becomes available." (*Id.*)

Ultimately, on August 17, 2021, Hintze received a COVID-19 vaccination. (*Id.* at 77 (sealed).) On his Vaccine Administration Consent Form, Hintze checked "Yes" on the question asking: "Have you had a positive test for COVID-19 or has a doctor ever told you that you had COVID-19?" (*Id.*) According to Hintze's medical records, he tested positive for COVID-19 once on January 10, 2022. (*Id.* at 27-28 (sealed).) His records show negative test results on August 20, 2021, August 30, 2021, and January 5, 2022. (*Id.* at 29, 78, 79 (sealed).) On August 30-31, 2021, physician's orders and progress notes show Hintze was given cough drops for a cough and sore throat and ear drops for ear wax. (*Id.* at 92, 96 (sealed).) There are no other medical records pertaining to COVID-19. (*See id.* at 1-96 (sealed).)

According to a Declaration of Emergency signed by former Governor Steve Sisolak, the COVID-19 pandemic came to fruition on March 13, 2020, when President Donald Trump declared a nationwide emergency. (ECF No. 38-1.) In response to the COVID-19 pandemic, the NDOC implemented policy changes in accordance with Center for Disease Control ("CDC") guidelines, which were updated consistently through the pandemic. (*See* ECF No. 38-2.) The NDOC specifically implemented protocols for testing, isolation, exposures, personal protective equipment (e.g., masks), and offender transports. (*Id.*)

Additionally, in February 2020, the NDOC updated Medical Directive 231, Communicable Diseases related to COVID-19. (*Id.* at 7.) Medical Directive 231 provides guidance to custody and medical staff for proper procedures for the housing of NDOC inmates with communicable diseases. (*Id.*)

According to a Declaration submitted by Associate Warden ("AW") Daniel Collier, who was a Lieutenant for LCC at the time relevant to the complaint, he helped with creating and implementing LCC's COVID-19 policies and procedures. (ECF No. 38-6 at

2.) During the entirety of the COVID-19 pandemic, LCC followed all policies and procedures pertaining to COVID-19 that was established by the CDC and NDOC, including, but not limited to: mandatory quarantine periods, distancing protocols as available, and mask mandates. (*Id.* at 2-3.) If staff members or inmates were not following COVID-19 procedures, they were advised to follow the procedures and if they again refused or failed to comply were disciplined. (*Id.* at 3.) The COVID-19 pandemic was complicated and ever changing, but LCC did everything it could to ensure the safety and security of the institution, staff members, and all inmates. (*Id.* at 4.)

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,

speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.     DISCUSSION

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

///

"[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants argue that they were not deliberately indifferent because they did not disregard the risk of harm in this case–which is a necessary element that Hintze must establish to survive summary judgment. (ECF No. 38 at 10-11.) Instead, the declaration provided by AW Collier provides the steps taken to establish protocols and procedures for handling the COVID-19 pandemic at LCC. (*See* ECF No. 38-6.) Guidance was sought from the CDC. During the entirety of the COVID-19 pandemic, LCC followed all policies and procedures pertaining to COVID-19 that were established by the CDC and NDOC, including, but not limited to: mandatory quarantine periods, distancing protocols as available, and mask mandates. Despite the best efforts of State Officials, prison officials and employees, COVID-19 got into the prisons.

However, in determining whether Defendants were deliberately indifferent to Hintze's safety, "[t]he key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether the efforts ultimately averted the risk; instead the key inquiry is whether Defendant 'responded reasonably to the risk.'" *Martinez*

*v. Sherman*, No. 1:21-cv-01319-BAM (PC), 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) (citing *Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021); accord *Benitez v. Sierra Conservation Center*, 1:21-cv-00370-BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021).) Defendants have established that they undertook efforts to prevent the spread of COVID-19, including implementing several procedures established by the CDC. While Defendants may have been unsuccessful in their efforts to prevent Hintze from contracting COVID-19, it cannot be said they disregarded the risk COVID-19 posed to *all* inmates. Defendants are responsible for the safety of all NDOC inmates, and making a choice that would prevent the most inmates from contracting the virus is a rational decision which does not demonstrate the disregard of risk to any individual inmate's safety. *Farmer*, 511 U.S. at 837.

For all these reasons, Defendants have met their burden on summary judgment as they have submitted admissible evidence establishing that they did not disregard a risk to Hintze's safety. The burden now shifts to Hintze to establish that a genuine issue of material fact actually exists. Hintze must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*, 992 F.3d at 897. However, Hintze has not provided any facts to show that Defendants knew of *and disregarded* the serious risk of COVID-19. And Hintze's bald assertions that LCC did not follow the NDOC's medical guidance for handling the COVID-19 pandemic is unsupported and belied by the record. Thus, Hintze has failed to meet his burden on summary judgment to show an issue of fact that Defendants were deliberately indifferent to Hintze's safety.

As Defendants met their burden on summary judgment, and Hintze has not established that a genuine issue of material fact exists, Defendants' motion for summary judgment should be granted.[3] *Matsushita,* 475 U.S. at 586.

///

///

---

[3] Because the Court finds that Hintze's claim fails on the merits, it need not address Defendants' procedural argument regarding qualified immunity.

IV. **CONCLUSION**

For the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 38), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

V. **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 38), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: September 5, 2024.

_____
**UNITED STATES MAGISTRATE JUDGE**