UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JASON HINTZE,<br><br>                   Plaintiff,<br>     v.<br><br>STEVE SISOLAK, *et al*.,<br><br>                  Defendants. | Case No. 3:22-cv-00436-MMD-CLB<br><br>ORDER |

## I. SUMMARY

*Pro se* Plaintiff Jason Hintze, who is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), filed a complaint under 42 U.S.C. § 1983 alleging that Defendants'[1] unreasonable response to the COVID-19 pandemic at the Lovelock Correctional Center ("LCC") violated his civil rights. (ECF No. 7 ("Complaint").) The Court previously screened the Complaint and allowed Plaintiff to proceed against Defendant NDOC officials on an Eighth Amendment claim for deliberate indifference to unsafe prison conditions. (ECF No. 6.) Defendants filed a motion for summary judgment.[2] (ECF No. 38 ("Motion").) Now before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Carla L. Baldwin, recommending that the Court grant the Motion and enter judgment in favor of Defendants. (ECF No. 54.) Objections to the R&R were due September 19, 2024. (*See id.*) Although Hintze has not filed an objection to date, the

---

[1]Defendants are NDOC prison officials Charles Daniels, Tim Garrett, Kara LeGrand, Harold Wickham, Kirk Widmar, and Brian Williams. (ECF Nos. 6, 7, 38.) In its screening order, the Court also permitted Plaintiff to proceed with a claim against Doe correctional officers, if and when he discovered their identities. (ECF No. 6.) To date, Plaintiff has not substituted the identities of any Doe officers.

[2]Hintze responded to the Motion (ECF No. 50) and Defendants replied (ECF No. 52).

Court will review the issues in the R&R de novo. Because the Court finds that Defendants have not met their burden to demonstrate the absence of a genuine dispute of material fact, the Court rejects the R&R and denies the Motion.

**II.     DISCUSSION[3]**

In her R&R, Judge Baldwin recommends that the Court grant summary judgment for the prison official defendants because they sufficiently demonstrate they did not unreasonably disregard risks to Hintze's safety at LCC during their COVID response in 2020 and 2021. (ECF No 54 at 8.) Judge Baldwin further concludes that Hintze has not established any genuine issue of material fact in rebuttal. (*Id*.) See Fed. R. Civ. P. 56(a); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (noting that a party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine factual dispute; if they do so, the burden shifts to the nonmoving party to establish the existence of a factual issue). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). *See also* Fed. R. Civ. P. 72. Because Plaintiff did not object to the R&R, the Court is not required to conduct de novo review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1116 (9th Cir. 2003) ("De novo review of the magistrate judges' findings and recommendations is required if, but *only* if, one or both parties file objections to the findings and recommendations.") (emphasis in original). Nevertheless, the Court finds that de novo review is warranted here and will conduct its own analysis of Defendants' Motion and evidence cited therein. *See* 28 U.S.C. § 636(b)(1).

///

///

///

---

[3]The Court incorporates by reference Judge Baldwin's description of the pertinent procedural and factual background provided in the R&R and adopts this background to the extent it is consistent with the Court's findings in this order.

### A. Eighth Amendment Conditions of Confinement

Defendants argue that undisputed evidence confirms that no Eighth Amendment violation occurred. (ECF No. 38 at 8.) *See C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (noting that officials are entitled to qualified immunity in the absence of a constitutional violation). In particular, Defendants emphasize that NDOC implemented COVID policies in line with CDC guidelines and argue that prison officials "responded reasonably to the risk" given the ever-changing nature of the pandemic and the inherent limitations of the prison environment. Defendants do not meet their burden.

The Eighth Amendment prohibits prison conditions which "involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). To prevail on a conditions of confinement claim, a plaintiff must meet both an objective and a subjective test. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective prong, it is enough for plaintiff to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes. *See id.* at 842. To satisfy the subjective element, a plaintiff must demonstrate that a prison official was "deliberately indifferent" to the safety risk. *See id.* at 837.

As a preliminary matter, the Court notes that it may consider portions of Hintze's sworn *pro se* Complaint as well as the declaration included in his response to the Motion (ECF No. 50 at 13-14) as competent summary judgment evidence in this action.[4] *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (finding that a *pro se* litigant may present motions and pleadings as summary judgment evidence to the extent the contents of those documents are based on personal knowledge, they set forth facts that would be

---

[4]In the R&R, Judge Baldwin treats A.W. Collier's declaration (ECF No. 38-6) as uncontested evidence without weighing Plaintiff's Complaint and declaration—which Plaintiff specifically highlights in his opposition—as documents with meaningful evidentiary value. Given the more lenient standard imposed in *pro se* cases, however, the Court weighs both Plaintiff's declarations and Defendants' submitted affidavits.

admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct).

Turning to the record, the Court finds that Defendants' summary judgment evidence does not demonstrate the absence of a dispute. With regard to the objective element of the deliberate indifference test, COVID-19 poses a substantial risk of serious harm. *See Martinez v. Sherman*, Case No. 21-cv-01319, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) (collecting cases).[5] Defendants acknowledge as much in their Motion. With regard to the subjective element, Hintze has done more than merely assert "generalized allegations that [Defendants] ha[ve] not done enough to control the spread" of COVID-19. *See Laferriere v. Bodwell*, Case No. 21-cv-05174, 2021 WL 1386989, at *3 (W.D. Wash. Apr. 13, 2021) (quoting *Blackwell v. Covello*, Case No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021)). Rather, Plaintiff alleges that Defendants knew about an inadequate response to COVID-19 at LCC—and knew that this response violated *NDOC's own* COVID policies—while personally declining to follow or enforce those policies. Hintze contends that Defendants toured LCC multiple times during 2020 and repeatedly observed the conditions in the facility, also receiving calls and emails from advocacy groups informing them of the conditions at LCC. (ECF No. 7 at 6-9.) He specifically asserts in his sworn Complaint that Garrett, LeGrand, and Widmar themselves failed to comply with the mask mandate instituted by NDOC, and that Defendants witnessed correctional officers at LCC failing to comply with the mask mandate—sometimes even coughing in the direction of inmates who complained—without intervening. (*Id.*) Defendants did not require correctional officers to enforce the policy that prisoners must wear masks. (*Id.*) Hintze's other allegations include that prisoners were forced to eat in a crowded chow hall where social distancing was

---

[5]The parties contest when and how many times Hintze contracted COVID-19, and Defendants highlight undisputed evidence that Hintze initially declined the vaccine. But it is clear from the record that Plaintiff contracted COVID at least once, and Plaintiff asserts that he became seriously ill more than once even in the absence of positive tests in his medical records. (ECF No. 40.) Viewing the facts in the light most favorable to Hintze, Court finds enough evidence at the summary judgment stage to support causation.

4

impossible, while Defendants did nothing to mitigate the high risks of this environment. (*Id.*) These facts arguably go to prison officials' subjective indifference to NDOC policy and, more broadly, their indifference to the risk of exposing prisoners to a novel and dangerous illness.

To support their Motion, Defendants put forward documentation of NDOC and LCC's COVID policies and several prison press releases. (ECF Nos. 1, 2, 3, 5.) The primary effect of these exhibits is to demonstrate that NDOC indeed issued COVID guidelines, including a mask mandate for staff. But viewed in the light most favorable to Hintze, this evidence strengthens his claims under the subjective indifference prong—it suggests that Defendants' actions contravened well-publicized prison policy. Defendants also submit a declaration from LCC Associate Warden Daniel Collier, in which he describes LCC's chow-hall procedures and attests, among other things, that "[d]uring the entirety of the COVID-19 pandemic, LCC followed all policies and procedures pertaining to COVID-19 . . . established by the CDC and the NDOC, including, but not limited to . . . mandatory distancing protocols as available; and mandatory mask mandates."[6] (ECF No. 38-6 at 3-4.) The Court questions to what extent Collier can attest from personal knowledge that "LCC followed all policies" throughout "the entirety" of the pandemic, especially as this statement is applied specifically to Defendants. But setting that aside, Collier's declaration at best continues to highlight a disputed factual issue as to whether conditions at LCC under Defendants' oversight in fact aligned with NDOC policy and CDC health standards, with conflicting statements by Collier and Hintze each signed under penalty of perjury.

Given the nature of these claims and evidence, the Court is unpersuaded by Defendants' reliance on the argument that the Constitution does not require "perfection" but only a reasonable response to the risk given the circumstances. *See Martinez*, 2022 WL 126054, at *6. Defendants insist, in essence, that they did the best they could—and

---

[6]Collier states that correctional officers who did not follow the prison's COVID standards were warned and then disciplined, but there is no additional evidence in the record documenting when or how any discipline occurred.

that COVID rates at LCC were relatively low in 2020. But the central issue is not whether Defendants failed to respond perfectly—it is whether Defendants deliberately declined to enforce minimum precautions, including the precautions NDOC itself touted. And while it may be true that taken alone, some of Plaintiff's allegations about lack of social distancing do not amount to constitutional violations given prisons' inherent limitations, the Court considers Hintze's asserted facts in combination. *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981) (noting that prison conditions may be unconstitutional "alone or in combination"). Taking the evidence and allegations together, a reasonable trier of fact could find that Defendants violated Hintze's Eighth Amendment rights through deliberate indifference to the risk of disease.

### B.     Qualified Immunity

Defendants further argue that even if a factual dispute remains as to whether a constitutional violation occurred, they are nevertheless entitled to qualified immunity because no clearly established right exists.[7] (ECF No. 38 at 11-12.) The Court disagrees.

When considering whether a claim may proceed against prison officials without the protection of qualified immunity, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *City of Sonora*, 769 F.3d at 1022 (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 240-42 (2009) (providing that a district court may address these elements in any order). Qualified immunity provides protection unless "an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words, qualified immunity is defeated only when an official defendant violates a clearly established constitutional right. *See City of Sonora*, 769 F.3d at 1022. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what

---

[7]Judge Baldwin did not reach this argument because she found in favor of Defendants on liability.

he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, viewing all evidence in the light most favorable to Plaintiff, the Court first concludes that disputed facts remain as to whether Defendants violated Plaintiff's Eighth Amendment rights. *See Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014) (noting that a court must view all evidence and related inferences in the light most favorable to the nonmoving party).

As to the second factor, Defendants argue that there is "no case that would put . . . defendant[s] on 'clear notice' that their actions in this particular case violated Hintze's constitutional rights." (ECF No. 38 at 11.) For support, they again point to evidence that NDOC, through LCC, implemented all CDC guidelines. The Court finds this argument uncompelling for several reasons. First, under Ninth Circuit law, Plaintiff has a clearly established right to be free from exposure to contagious illnesses. Exposure to COVID—even at the beginning of the pandemic—implicates this right. Notably, in *Hampton v. California*, 83 F.4th 754, 758 (9th Cir. 2023), *cert. denied sub nom. Diaz v. Polanco*, 144 S. Ct. 2520 (2024), the Ninth Circuit held that California prison officials were not entitled to qualified immunity for their 2020 decision to transfer high-risk inmates to a facility with no known COVID-19 cases because while the pandemic may have been novel, "the right at issue . . . is [the long-established] right to be free from exposure to a serious disease." This right, viewed at the proper level of generality, has been established since at least 1993. *See id.*; *Helling v. McKinney*, 509 U.S. 25 (1993) (holding that prisoners have an Eighth Amendment right to be free from exposure to serious disease). *See also Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985) (holding that a "lack of adequate ventilation and air flow undermin[ing] the health of inmates and the sanitation of" a prison violated the Eighth Amendment).

Second, the Court has already found that disputed facts remain as to whether Defendants complied with existing CDC guidelines or NDOC's own policy. As a result, Defendants' argument that their compliance with such policy alone entitles them to the

blanket protection of qualified immunity is inapposite at this stage. When a public official acts in reliance on a statute or regulation, that official is generally entitled to qualified immunity unless the statute or regulation is "patently violative of fundamental constitutional principles." *Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999) (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994)). But here, the existence of well-publicized NDOC policy weighs towards a finding that Defendants were on notice as to the constitutional implications of any actions unreasonably worsening the spread of COVID. In short, the Court cannot make a finding that Defendants are entitled to qualified immunity based on the evidence before it. Accordingly, the Court denies the Motion on de novo review.

### III.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Judge Baldwin's R&R (ECF No. 54) is rejected.

It is further ordered that Defendants' motion for summary judgment (ECF No. 38) is denied.

The Court refers this case to Magistrate Judge Baldwin to conduct a settlement conference. The proposed joint pretrial order is due 30 days from the settlement conference.

DATED THIS 8th Day of October 2024.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE